KENNEDY, Circuit Judge,
dissenting.
Jury instructions exist to submit the case’s issues to the jury so that it can decide the case in accordance with the applicable law. See Morgan v. N.Y. Life Ins. Co., 559 F.3d 425, 434 (6th Cir.2009). The Union employment policy here stated that it could terminate an employee for “fail[ure] to meet employment performance standards” or if “[t]he Union’s needs will be furthered by said termination, particularly as construed by the Supreme Court in Finnegan v. Leu and its progeny.” Ample evidence existed in the record for the jury to draw the conclusion that the Union terminated Ardingo in accordance with Finnegan. I conclude that the district court should have instructed the jury on the employment policy’s Finnegan clause, as the Union requested, and for that reason, I respectfully dissent.
I.
In Finnegan, the Supreme Court held that former union employees employed by the union lacked a cause of action against them union under the LMRDA for terminations based on political opposition. 456 U.S. at 441-42, 102 S.Ct. 1867 (reasoning, in part, that the LMRDA assures “the ability of an elected union president to select his own administrators [as] an integral part of ensuring a union administration’s responsiveness to the mandate of the union election”). In view of the above, Finnegan occupies a central role in this appeal. Its scope is a question of federal statutory interpretation with regard to the LMRDA and the preemption question, and a question of state law as to the contractual provision’s effect. I question the majority’s determination that the LMRDA does not preempt this action based in state law. Preemption protects the “uniform national labor relations policy” enacted in the LMRDA. See Vandeventer v. Local Union No. 513 of the Int'l Union of Operating Eng’rs, 579 F.2d 1373, 1377-78 (8th Cir.1978). However, I need not decide the question, because even if I accept the majority’s preemption argument and its concomitant interpretation of Finnegan, the Union nevertheless deserved a jury instruction on it under its employment policy-
II.
I agree with the majority’s characterization of the applicable law as to Ardingo’s underlying claim. See Maj. Op. at 940-41. The plaintiff has the burden of proving that he was living up to the contract and the terms of employment up to his termination. The burden then shifts to the defendant to show that the termination was legal. If the defendant makes this showing, the burden shifts back to the plaintiff to show that the proffered reason was mere pretext. Over the course of *945 trial, the Union argued that it did not terminate Ardingo-it laid him off, and should the jury conclude that it did terminate Ardingo, economic necessity motivated the termination. Ardingo offered evidence that the Union terminated him; also, Ardingo presented two alternative, individually sufficient theories in response to Ardingo’s purported termination for economic necessity: (1) the Union did not face financial circumstances necessitating a reduction in workforce; and (2) the Union fired him in retaliation for his participation in the Department of Labor investigation, as part of suspicion that he planned to run against Potter, and for political opposition generally. Ardingo’s own testimony provided much of the evidence for the Union’s requested jury instruction.
In Harvey v. Hollenback, 113 F.3d 639 (6th Cir.1997), we explained that, “[i]n Finnegan, a newly elected union leader was able to fire appointed union officials who had campaigned against him because ultimately, he was expressing the will of the majority by selecting a staff that shared his views and could be trusted to faithfully execute and implement his policies.” Id. at 643. A jury could have narrowly construed Ardingo’s retaliation theory as termination for lack of political accord with the Union administration. Rumors had swirled around the Union in early- to mid-2001 that Ardingo intended to run against Potter for President in the upcoming election, which built up animosity against Ardingo within Potter’s administration. Later, Potter and his administration perceived that Potter volunteered information to the Department of Labor to undermine them politically. The jury might have concluded that the Union terminated Potter because he could not be trusted to faithfully execute Potter’s policies to further the Union’s needs.
Without a jury instruction on the meaning of Finnegan, the district court did not make the jury aware of the legality of this articulated ground for Ardingo’s termination. Put differently, the district court did not adequately describe the case’s applicable law to the jury such that it could come to an accurate verdict after applying its findings of fact to said applicable law.
III.
The majority is correct in pointing out that the Union largely relied upon economic necessity as the legal ground for Ardin-go’s termination. Maj. Op. at 939-40. I do not dispute that as a strategic matter, the Union appeared to have determined that presenting an extensive case on characterizing Ardingo’s termination as political would weaken its primary defense that economic necessity motivated the firing. Nevertheless, the majority does not deny that the Union sought testimony from Potter on the meaning of the employment policy’s Finnegan clause so as to get that issue before the jury. Id. at 939-40. It even does not deny that this represented an attempt by the Union to argue that the employment policy made legal a certain type of termination for political opposition. To the contrary, Ardingo himself presented ample evidence that the Union terminated him for political opposition upon which the jury could have concluded in the Union’s favor on this ground.
In actual practice, a party’s theory of the case is not monolithic. This case was complex and took nearly a week to try. As a matter of strategy, the Union intoned loudly its economic necessity argument while whispering its political opposition theory. That fact alone does not eviscerate the Union’s right under the policy to terminate Ardingo in accordance with Fin *946 negan, nor its concomitant right to have the jury decide the case in accordance with the applicable law. See Taylor v. TECO Barge Line, Inc., 517 F.3d 372, 387 (6th Cir.2008) (“A party needs only a slim amount of evidence to support giving a jury instruction
IV.
By denying the Union’s request for an instruction on the policy’s Finnegan clause, the district court, in essence, ruled that the Union’s argument that it legally terminated Ardingo in accordance with said clause failed as a matter of law only for failure to -produce sufficient evidence to support that conclusion, because plenty of evidence in the record, produced by Ardin-go, suggested that the Union terminated him for his political opposition. The question then becomes: does Ardingo deserve summary disposition on this issue or should the district court have submitted it to the jury, simply because he, not the Union, produced the relevant evidence?
The theory of Ardingo’s termination as political opposition could either fit into the legal framework given above as one of the Union’s legal reasons for termination, or as one of Ardingo’s showings of pretext. Either Ardingo refuted the Union’s economic necessity rationale by arguing both lack of economic necessity and political-opposition termination, or the Union put forth economic necessity and political opposition as legal reasons for termination and Ardingo refuted both. No doubt the majority states correctly that the Union failed to produce evidence of political opposition, so that it did not put forth political opposition as a lawful ground for termination alongside its economic necessity argument. Ardingo, not the Union, injected political opposition into the case to show pretext; the law burdens him with production on his theories of pretext. In short, a proffered “theory of the case” encompasses more than the evidence a party produces, particularly when the law tasks the opposing party with the burden of production.
The district court allowed the jury to decide whether economic necessity was a pretextual reason for Ardingo’s termination because the Union actually terminated Ardingo in accordance with some other unlawful reason. To decide that issue is to decide that the Union had not terminated Ardingo in accordance with the Finnegan clause, a lawful grounds for termination. Ardingo put forth the larger issue of pretext that included the narrower issue of political opposition to support his position. Ardingo’s entitlement to have his political opposition theory get before the jury to respond to the Union’s economic necessity argument then implies the same for the Union’s Finnegan-clause argument. Summary disposition of the Finnegan-clause issue in Ardingo’s favor does not follow when ample evidence in the record existed, produced by Ardingo and gestured at by the Union, to conclude in the Union’s favor.
V.
Abundant evidence of political opposition existed. The Union attempted to argue the theory that even if economic necessity was a pretextual reason for Ardingo’s termination because the Union actually terminated him for political opposition, such a termination would be legal as well. The *947 jury instructions were prejudicial.[2] For the foregoing reasons, the Union deserved a jury instruction on Finnegan, and so, I would reverse the judgment of the district court and remand for a new trial.

. The majority argues that no prejudice existed because the district court admitted the just-cause policy into evidence and read the Supreme Court's holding in Finnegan to the jury during Potter's direct testimony. Maj. Op. at 939-40. This ignores that the district court gave the following jury instructions:
In order for you to decide whether there was a good or just cause for the termination of plaintiff’s employment under defendant's policy you must determine whether defendant was actually in financial circumstances necessitating a reduction in its work force, and whether that circumstance was the actual reason for termination of plaintiff's employment.
If defendant was not in circumstances requiring a reduction in its work force or if that was not the actual reason for plaintiff’s termination then there was not good or just cause for termination.
These instructions render the policy’s Finnegan clause inoperative as far as the jury is concerned.