717 F.2d 805
 114 L.R.R.M. (BNA) 2706, 98 Lab.Cas. P 10,473
 LOCAL UNION NO. 277, INTERNATIONAL BROTHERHOOD OF PAINTERS
AND ALLIED TRADES, Petitioner in No. 82-3392,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
Jennings V. LOVE, Petitioner in No. 82-3453,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Local Union No. 277, International Brotherhood of Painters
and Allied Trades, Intervenor.
 Nos. 82-3392, 82-3453.
 United States Court of Appeals,
Third Circuit.
 Argued June 6, 1983.
Decided Sept. 19, 1983.
 
 Robert F. O'Brien, James Katz (argued), Tomar, Parks, Seliger, Simonoff & Adourian, Haddonfield, N.J., for petitioner Union.
 Charlotte Hollander (argued), Groch & Hollander, Somers Point, N.J., for petitioner Jennings V. Love.
 William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Barbara Atkin (argued), N.L.R.B., Washington, D.C., for respondent.
 Before SEITZ, Chief Judge, SLOVITER, Circuit Judge, and POLLAK, District Judge.*
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 I.
 
 1
 Local Union No. 277, International Brotherhood of Painters and Allied Trades (the Union) petitions for review of an order of the National Labor Relations Board (the Board) finding that the Union violated section 8(b)(1)(A) of the National Labor Relations Act (the NLRA), 29 U.S.C. Sec. 158(b)(1)(A) (1976), by operating an exclusive hiring hall without regard to objective standards for referral. See Polis Wallcovering, 262 N.L.R.B. No. 169, 1982-83 NLRB Dec. (CCH) p 15,077 (1982). The Union also seeks review of the Board's order finding that it violated sections 8(b)(1)(A) and 8(b)(2) of the Act, 29 U.S.C. Secs. 158(b)(1)(A) & (b)(2), by its failure to refer for employment Edward W. Pygatt.
 
 
 2
 Jennings V. Love petitions for review of the Board's order finding that the Union did not violate sections 8(b)(1)(A) and 8(b)(2) of the Act by its failure to refer him for employment. The Board resists this petition, and we granted the Union's motion to intervene in support of the Board. Love also seeks review of the Board's denial of his motion to reopen the record.
 
 
 3
 The Board has filed a cross-application for enforcement of its order against the Union with respect to the hiring hall and Pygatt. This court has jurisdiction under sections 10(e) and (f) of the Act, 29 U.S.C. Secs. 160(e) & (f).
 
 II.
 The Hiring Hall's Referral Procedures
 
 4
 The Union operates an exclusive hiring hall in Atlantic City, New Jersey, which refers painters and paperhangers to employers pursuant to the terms of a collective bargaining agreement between the Union and the National Painting and Decorating Contractors of America, an employers' association. Article IV of that agreement sets forth certain requirements and procedures with respect to the referral system. Article IV provides:
 
 Hiring
 
 5
 4.1 In the employment of workmen for all work covered by this agreement, the following provision shall govern:
 
 
 6
 (a) The union shall establish and maintain an open and nondiscriminatory employment list for the employment of workmen of this particular trade, including journeymen painters and indentured apprentices previously employed by employers in the multi-employer unit included in this agreement and non-member workers who may make application for a place on this list.
 
 
 7
 (b) Whenever desiring to employ workmen, the employer shall call upon the union or its agent, for any such workmen as they may from time to time need, and the union or its agent shall immediately furnish the employers the required number of qualified and competent workmen needed by the employer.
 
 
 8
 (c) The union or its agent will furnish each such required competent workman entered on said list to the employer by use of a written referral, which shall be mailed by the union to the workman dispatched and will furnish such workmen from the union's open listing in the manner and order following:
 
 
 9
 1. The specifically named workmen to have recently been laid off or terminated by an employer now desiring to re-employ the same workmen, provided they are available for employment.
 
 
 10
 2. Workmen who have been employed by employers within the unit covered by this agreement during the previous ten (10) years.
 
 
 11
 3. Workmen whose names are entered on the list above referred to and who are available for employment.
 
 
 12
 ....
 
 
 13
 (e) The employer shall have entire freedom of selectivity in hiring and may reject any person referred to it by the union.
 
 
 14
 (f) A notice incorporating the above enumerated terms and conditions relating to the hiring system shall be conspicuously posted at the union's office and principal place of business.
 
 
 15
 (g) No provision of this agreement shall be based upon or ... affected by the union membership, by-laws, regulations, constitutional provisions or any other aspect or obligation of union membership, policies or requirement.
 
 
 16
 The Board found that James T. Brennan, the business manager of Local 277, uses the following procedure to determine who will be referred for employment when a contractor requests painters or paperhangers from the Atlantic City hiring hall. Brennan accords first preference in referrals to employees specifically recalled by former employers. Brennan then usually chooses workers from among those present in the hiring hall when he receives a job request, although there is uncontroverted evidence that he would call Pygatt and petitioner Love on the telephone to give them referrals. Brennan uses his own judgment to determine which people to send if there are more workers in the hall than there are jobs available. Although Brennan testified that in selecting workers for referral, he considers who is best suited for the kind of work to be done and who on the basis of past experience is familiar with the particular employer or the particular job site, the Board found that the choice is "purely personal and made without aid of objective factors." 262 N.L.R.B. No. 169 at 9 (opinion of the ALJ, adopted by the Board).
 
 
 17
 The Board also found that Brennan uses the following documents in making referrals. First, to aid him in satisfying the Union's contractual obligation to refer named workers recalled by former employers, Brennan keeps a list of workers who have recently been laid off. This list does not distinguish between union members and non-members. Brennan also maintains a card file or files of the names of non-members seeking employment. There is also a Union membership list, but Brennan does not use it in making referrals; he testified that he knows everyone in the small Local.
 
 
 18
 The General Counsel charged that by operating a hiring hall without using objective criteria for referral, the Union violated sections 8(b)(1)(A) and 8(b)(2) of the NLRA.[1] The General Counsel sought an award of backpay to unidentified job applicants and also sought to impose liability under sections 8(a)(1) and 8(a)(3), 29 U.S.C. Secs. 158(a)(1) & (3), on employers alleged to have participated with the Union in its unlawful referral scheme.[2] The Board found that the Union did not violate section 8(b)(2) and that the employers did not violate sections 8(a)(1) or 8(a)(3). The Board did find, however, that the referral system worked in violation of section 8(b)(1)(A). The Board therefore issued a cease and desist order forbidding the Union to make referrals through the hiring hall without reference to published, objective criteria or to in any similar way restrain or coerce job applicants in the exercise of their rights under section 7. The Board also required the Union to maintain clear records of its referral decisions and to make these records available to all job applicants.
 
 
 19
 Section 7 of the NLRA, 29 U.S.C. Sec. 157, gives employees the right to join a union or to refrain from joining, except where there is a union security agreement as authorized by section 8(a)(3), id. Sec. 158(a)(3).[3] Because section 8(b)(1)(A) protects the exercise of section 7 rights, a union violates section 8(b)(1)(A) if it coerces an employee into joining a union or threatens to harm him if he does not join. United Parcel Service v. NLRB, 706 F.2d 972, 978 (3d Cir.1983); Local 542, International Union of Operating Engineers v. NLRB, 328 F.2d 850 (3d Cir.), cert. denied, 379 U.S. 826, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964). The question presented is whether Brennan operated the Union hiring hall in a way that "may reasonably tend to coerce or intimidate" workers into joining the Union. See United Parcel Service, 706 F.2d at 978 (and cases therein cited). If there is substantial evidence to support the Board's conclusion that the Union operated the hiring hall in violation of section 8(b)(1)(A), we will enforce the Board's order finding such a violation. See Universal Camera Corporation v. NLRB, 340 U.S. 474, 487-88, 71 S.Ct. 456, 463-64, 95 L.Ed. 456 (1951); NLRB v. Treasure Lake, Inc., 453 F.2d 202 (3d Cir.1971).
 
 
 20
 In its defense, the Union first argues that there is no evidence that Brennan intentionally discriminated against non-union workers and no allegation of injury to any specific non-union workers. In making this argument, the Union appears to confuse section 8(b)(1)(A) and 8(b)(2). This is understandable, because the two sections often work in tandem and because the General Counsel initially alleged violations of both sections. While section 8(b)(1)(A) prohibits coercion of employees by a union, section 8(b)(2) prohibits a union from causing or attempting to cause an employer to discriminate against an employee in a way that would encourage or discourage union membership. A finding that a union provoked or attempted to provoke discrimination in violation of section 8(b)(2) is usually accompanied by a finding that the same conduct constituted coercion in violation of section 8(b)(1)(A).[4]
 
 
 21
 In this case, however, the Board found that because there was no evidence that Brennan discriminated in fact against non-union workers in his employment referrals, his method of making referrals did not violate section 8(b)(2). Nevertheless, the Board did find that the referral procedure violated section 8(b)(1)(A), because Brennan made referrals without reference to objective criteria "under conditions which might accord preference to members over non-members." 262 N.L.R.B. No. 169 at 10-11 (opinion of the ALJ, adopted by the Board).
 
 
 22
 Coercion, not discrimination, is the focus of section 8(b)(1)(A). Of course, there must be evidence of specific coercive practices to establish a violation of section 8(b)(1)(A), just as there must be evidence of "specific discriminatory practices" to establish a violation of section 8(b)(2), Local 357, International Brotherhood of Teamsters v. NLRB, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961). The existence of a hiring hall, like the existence of a union, may permissibly encourage union membership; only when the union or the hiring hall engages in coercive practices does it contravene the mandate of section 8(b)(1)(A).
 
 
 23
 This principle is exemplified by a case that the Union invokes in its defense, NLRB v. Local 483 and Local 11, International Association of Bridge, Structural and Ornamental Ironworkers, 672 F.2d 1159 (3d Cir.1982). In Local 483, we rejected the Board's finding that a union operated a hiring hall in violation of sections 8(b)(1)(A) and 8(b)(2) because the record did not show evidence of intentional discrimination. The ALJ and the Board in Local 483 made very cursory findings and were unduly influenced by previous cases decided against the same union on similar allegations. See id. at 1164. Our response was to deny enforcement and refer the case to the Board for further proceedings. However, the Union's invocation of Local 483 cannot advance its cause if there is substantial evidence that the hiring hall's referral practices may reasonably tend to coerce workers in the exercise of their section 7 rights.
 
 
 24
 The Board found that Brennan's method of making employment referrals depends largely on his personal knowledge of the experience and ability of each worker and that he is likely to know more about union members than about non-members. Furthermore, if a worker does not get a referral for a particular job, he has no way of determining whether Brennan had a legitimate reason for passing him by. Without a publicly verifiable system of referral, the worker may easily suppose that it is necessary to curry Brennan's favor to obtain referrals, and one obvious way to please a union official would be to join his union. Following our decision in Local 542, supra, it is not necessary to show actual coercion or intimidation in order to prove a violation of section 8(b)(1)(A): "The test of coercion and intimidation is not whether misconduct proves effective. The test is whether the misconduct is such that, under the circumstances existing, it may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act." Local 542, 328 F.2d at 852-53; cf. United Parcel Service, 706 F.2d at 978-79 (statement which could be considered innocuous may tend to be coercive in context of existing circumstances). Because we find substantial evidence in the record to support the Board's conclusion that the Union's hiring hall practices may reasonably tend to coerce workers into joining the Union, we will enforce that portion of the Board's order finding that the Union violated section 8(b)(1)(A).
 
 
 25
 Decisions by other courts have also required systematic reforms in job referral procedures. Cf., e.g., Local 138, International Union of Operating Engineers v. NLRB, 321 F.2d 130, 135 (2d Cir.1963) (where hiring hall system gave slight advantage to union members, reimbursement of hiring hall fees would be unwarranted and punitive, but cease and desist order is appropriate); Bailey v. Ryan Stevedoring Company, 528 F.2d 551, 557 (5th Cir.1976) (even though specific acts of racial discrimination were not proved, racially segregated Locals with 50-50 referral system violate the Civil Rights Act), cert. denied sub nom. Local 1830, General Longshore Workers v. Bailey, 429 U.S. 1052, 97 S.Ct. 767, 50 L.Ed.2d 769 (1977). In this respect, we disagree with that part of the decision in NLRB v. International Union of Operating Engineers, Local No. 12, 237 F.2d 670 (9th Cir.1956), cert. denied, 353 U.S. 910, 77 S.Ct. 666, 1 L.Ed.2d 664 (1957), in which the court declined to enforce a cease and desist order designed to remedy a referral system which "could conceivably admit of a discrimination against a nonunion workman" because "there was no evidence of a scheme or practice or discrimination by the union." Id. at 674. We note, however, that although the court in Local No. 12 held that the union did not violate sections 8(b)(1)(A) and 8(b)(2) because it did not discriminate in fact, the court did not consider the possibility that the potentially discriminatory referral system was coercive, in violation of section 8(b)(1)(A) alone.
 
 
 26
 The Union also argues that Brennan did not make referrals arbitrarily, but used a method that was "objective" in the sense of being orderly. The Union claims that Brennan was entitled to use discretion in selecting the best worker for the job and that the referral system did not violate the procedure for referral set out in the collective bargaining agreement.
 
 
 27
 There is no allegation that the Union breached its collective bargaining agreement, and we need not decide that question in order to determine that the Union implemented its referral system in violation of section 8(b)(1)(A).[5] Nor does the claimed orderliness of the hiring hall's referral system foreclose its reasonable tendency to coerce.[6] Both the terms of the collective bargaining agreement and the way in which Brennan made referral decisions leave room for impermissible discrimination. It is this latitude, this grant of unchecked power, that may reasonably tend to coerce job applicants into joining the Union. Although it may be permissible for a business manager to exercise some degree of discretion in making employment referrals through a hiring hall, he may not base his referrals solely on his personal knowledge of the workers if he is more likely to be familiar with the skills of union members than with those of nonmembers.
 
 
 28
 Having found substantial evidence to support the Board's conclusion that the Union operated its hiring hall in a manner that may reasonably tend to coerce workers into joining the Union, we will enforce those portions of the Board's order directed at the Union's violation of section 8(b)(1)(A). The Union does not challenge the remedy ordered by the Board.
 
 Refusal to Refer Jennings V. Love
 
 29
 The Board found that petitioner Jennings V. Love joined the Union in 1978 and that from 1978-1980, he was referred as an apprentice painter to several contractors. On June 27, 1980, Brennan filed internal union disciplinary charges against Love. These charges alleged, among other things, that Love abused Brennan at a membership meeting and that Love attempted to place a newspaper advertisement stating that the Union was "discriminatory," which Brennan alleged to be an act of disloyalty to the Union. On July 24, 1980, a Union trial board found Love guilty on these and other charges and fined him. Love received a work referral from the hiring hall on July 28, 1980, and he worked at that job until August 15, 1980, when the employer found him asleep on the floor and discharged him. On the same day, a trial board found Love guilty on further charges filed by the financial secretary of the Union and fined Love again. Love received no further referrals. On September 18, 1980, the Joint Apprenticeship Committee removed Love from the apprenticeship program. The Board found that Love apparently did not challenge the legitimacy of his expulsion.
 
 
 30
 On these facts, the Board found that the Union did not violate sections 8(b)(1)(A) and 8(b)(2) by refusing to refer Love for employment after July, 1980.[7]
 
 
 31
 Love acknowledges that his expulsion from the apprenticeship program made him ineligible for employment referrals through the hiring hall, and he does not challenge the legitimacy of this eligibility requirement. Rather, he challenges the legitimacy of his expulsion, arguing that Brennan engineered his dismissal from the apprenticeship program after Love began the criticism of Brennan and the Union that led to internal disciplinary procedures and fines.
 
 
 32
 In uncontroverted testimony, credited by the Board, Brennan testified that the Union could not refer a worker who was neither a mechanic nor an apprentice in his trade. The Board also found that "the removal of Love from the apprenticeship program on the basis of his past employment record, a recent discharge for flagrant misconduct, and his failure to meet the apprenticeship's classroom attendance requirement seemed entirely reasonable." 262 N.L.R.B. No. 169 at 13-14 (opinion of the ALJ, adopted by the Board). There is substantial evidence to support this finding. Although there is also some measure of evidence that Love's criticism angered Brennan and that this was a factor in Love's expulsion from the apprenticeship program, we may not choose between "two fairly conflicting views" as if we were deciding the issue de novo. Universal Camera Corporation, 340 U.S. at 488, 71 S.Ct. at 465. We therefore defer to the Board's finding that the Joint Apprenticeship Committee expelled Love from the apprenticeship program for legitimate reasons and that this disqualified him from receiving job referrals. This finding is equivalent to a finding that the Union established an affirmative defense to the unfair labor practice charge, under the rule of NLRB v. Transportation Management Corporation, --- U.S. ----, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). We will therefore deny Love's petition to set aside the Board's order finding that the Union did not violate sections 8(b)(1)(A) and 8(b)(2) with respect to petitioner Love.
 
 Refusal to Refer Edward W. Pygatt
 
 33
 The Board found that Edward W. Pygatt had been a paperhanger for some thirty years when he joined the Union in 1977. Between 1977-1980, he was referred to several employers, but he received no referrals after June 25, 1980. On June 27, 1980, business manager Brennan filed internal union disciplinary charges against Pygatt. The charges alleged, among other things, that Pygatt had abused Brennan in statements made to and published in a local newspaper and that Pygatt's published criticism of the Union constituted disloyalty to the Union. On July 24, 1980, a Union trial board found Pygatt guilty on all charges and fined him. On September 26, 1980, a trial board found Pygatt guilty on additional charges filed by the recording secretary of the Union and fined him again. Pygatt paid no fines, and his tender of dues was rejected pursuant to a Union policy that requires members to pay their fines before the Union will accept their dues. The Union then expelled Pygatt for non-payment of dues.
 
 
 34
 The Board found that although the quality of Pygatt's work was good, he was chronically late or absent, and that several employers told Brennan that they would prefer that Pygatt not be referred to them. The Board also found that on July 31, 1980, Pygatt sought an employment referral through the hiring hall; that Brennan told Pygatt that the only jobs available were with an employer who had already indicated that it did not want to rehire Pygatt; and that Brennan also told Pygatt that there were no jobs available for him because he had already been sent to every local wallcovering contractor and would be rejected by any of them. Brennan testified that he would not refer Pygatt because the Union had a legal and contractual obligation to refer only competent workers, but the Board explicitly rejected the testimony as not credible. The Board found that the Union violated section 8(b)(1)(A) and 8(b)(2) by its failure to refer Pygatt for employment after June, 1980.
 
 
 35
 Section 8(a)(3), 29 U.S.C. Sec. 158(a)(3), prohibits employers from discriminating among employees in a way that would encourage or discourage union membership. Section 8(b)(2) prohibits unions from causing or attempting to cause employers to discriminate in violation of section 8(a)(3). The "membership" to which section 8(a)(3) refers is "thus incorporated in section 8(b)(2) [and] is broad enough to embrace participation in union activities and maintenance of good standing...." Local 100, United Association of Journeymen v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963). The oft-quoted passage on this subject bears repeating here: "The policy of the Act is to insulate employees' jobs from their organizational rights. Thus sections 8(a)(3) and 8(b)(2) were designed to allow employees to freely exercise their right to be good, bad, or indifferent members, or abstain from joining any union without imperiling their livelihood." Radio Officers' Union v. NLRB, 347 U.S. 17, 40, 74 S.Ct. 323, 335, 98 L.Ed. 455 (1954). Specifically, the Union may not use its power to provide or withhold job referrals in order to reward or punish a worker for his union-related activities.
 
 
 36
 Applying Transportation Management, we hold that the General Counsel bore the burden of proving that retaliation for Pygatt's criticism of the Union was a "substantial or motivating factor" in its failure to refer Pygatt for employment. See Transportation Management, 103 S.Ct. at 2474. As an affirmative defense the Union was entitled to prove that it would not have referred Pygatt in any event. See id. at 2474-75.
 
 
 37
 The record contains evidence that Pygatt and the Union were battling each other on several fronts during the summer of 1980. There is evidence that Pygatt publicly criticized the Union and picketed the Union hall. Brennan and another Union official brought disciplinary proceedings against Pygatt, and the Union fined him. Contemporaneously, the Union refused to refer him for employment. Taking the record as a whole and giving due weight to the factual findings of the Board, see Universal Camera, 340 U.S. at 487-88, 71 S.Ct. at 463-64, we hold that there was substantial evidence to support the Board's finding that the Union's refusal to refer Pygatt for employment after June, 1980 was motivated by its hostility to Pygatt's criticism.
 
 
 38
 The Union argues that it had a contractual and legal duty to refer only competent workers and that this duty shields it from liability here because Pygatt was incompetent. The Board found that this justification is a pretext. The fact that the Union waited to invoke the alleged competency requirement against Pygatt until he became a thorn in its side provides substantial evidence to support the Board's finding. See, e.g., NLRB v. Laborers' International Union, Local 300, 613 F.2d 203, 207-08 (9th Cir.1980); cf. NLRB v. Princeton Inn Company, 424 F.2d 264, 266 (3d Cir.1970) (discharge of employee for abusiveness is unlawful where there was prior condonation plus evidence of hostility based on union activity). The Board's finding that the proffered justification is pretextual entails a finding that the Union did not carry its burden in making an affirmative defense based on a competency requirement.
 
 
 39
 The Union also argues that an attempt to refer Pygatt would have been futile because no contractors with jobs available would have hired him. The record is confusing on this point, but we note that the Board dismissed the charges against two employers who allegedly violated sections 8(a)(1) and 8(a)(3) by discriminating with the Union against Pygatt in retaliation for his criticism of the Union; the Board found that these employers would not have employed Pygatt even if he were referred, on the basis of Pygatt's work record.[8] The Board did find that the Union "referred paper hangers to numerous contractors during the period in which it declined to refer Pygatt." 262 N.L.R.B. No. 169 at 19 n. 9 (opinion of the ALJ, adopted by the Board.) The Union argued to the Board that the evidence was "insufficient to establish that jobs were available to which Pygatt could be referred," but the Board responded that such a showing was not necessary to establish an unfair labor practice.[9] Id.
 
 
 40
 The Board was correct. To make its case, the General Counsel did not have to show that there were jobs to which the Union could have referred Pygatt. The claimed unavailability of employers willing to hire Pygatt is, however, an affirmative defense to the General Counsel's case under the rule of Transportation Management, supra. The Board did not determine whether the Union carried its burden of proving that there were no requests for paperhangers from employers who would accept Pygatt if he were referred. We will set aside those portions of the Board's order that pertain to the Union's refusal to refer Pygatt for work and will refer this case to the NLRB for proceedings consistent with this opinion.
 
 
 41
 The Union also challenges the remedy granted to Pygatt. Because we will set aside those portions of the order that pertain to Pygatt, we need not examine the remedy that the Board provided him.
 
 III.
 
 42
 We will enforce the Board's order with respect to the Union's violation of section 8(b)(1)(A) in its hiring hall procedures. We will deny Love's petition to set aside the Board's order determining that the Union did not violate section 8(b)(1)(A) and 8(b)(2) by refusing to refer petitioner Love for employment. We will also deny Love's petition to set aside the Board's refusal to reopen the record. We will set aside those portions of the Board's order that pertain to Pygatt, and we will refer case number 82-3392 to the Board for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Louis H. Pollak, District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 These subsections provide:
 (b) It shall be an unfair labor practice for a labor organization or its agents--
 (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein ...;
 (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section ...;
 29 U.S.C. Sec. 158(b)(1)(A) & (b)(2).
 
 
 [2]
 Sections 8(a)(1) and 8(a)(3) provide:
 (a) It shall be an unfair labor practice for an employer--
 (1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title ...;
 ....
 (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....
 29 U.S.C. Secs. 158(a)(1) & (3).
 
 
 [3]
 Although Brennan testified that the collective bargaining agreement contains a union security clause, the Union does not invoke that clause as a defense
 
 
 [4]
 The relationship between the two sections is analogous to the relationship between sections 8(a)(1) and 8(a)(3), which are often used together to charge an employer with unlawful coercion and discrimination. In such cases, the Court of Appeals for the Seventh Circuit terms the section 8(a)(1) violation a "derivative violation" which follows from the violation of section 8(a)(3) and is proved by the same conduct. Indiana & Michigan Elec. Co. v. NLRB, 599 F.2d 227, 229 n. 2 (7th Cir.1979)
 
 
 [5]
 A breach of the contractual procedure for making hiring hall referrals may be construed as evidence of unlawful discrimination. See Journeymen Pipe Fitters Local 392 v. NLRB, 712 F.2d 225, 229-31 (6th Cir.1983); Local 483, 672 F.2d 1159, 1165 n. 14 (and cases therein cited). Discrimination in fact, however, is not necessary to a violation of section 8(b)(1)(A)
 
 
 [6]
 The parties' debate over orderliness and arbitrariness would be more appropriate if the Union's duty of fair representation were at issue here. See Local 483, 672 F.2d at 1165 n. 13; see also, e.g., Findley v. Jones Motor Freight, Inc., 639 F.2d 953 (3d Cir.1981); see generally, Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)
 
 
 [7]
 The Board also denied Love's motion to reopen the record, relying on section 102.48(d) of the Board's Rules and Regulations, 29 C.F.R. Sec. 102.48(d)(1) (1977). We agree with the Board that Love's motion did not meet the requirements of section 102.48(d)(1). We will therefore deny Love's petition to review the Board's denial of his motion to reopen the record
 
 
 [8]
 The Union contends that it cannot be held liable for a violation of sections 8(b)(1)(A) and 8(b)(2) if the employers were not held liable for a violation of sections 8(a)(1) and 8(a)(3). This argument ignores a critical distinction between sections 8(b)(2) and 8(a)(3): section 8(b)(2) prohibits even an attempt by a union to cause discrimination in violation of section 8(a)(3). See, e.g., Local No. 12, 237 F.2d at 673
 
 
 [9]
 The Union argues on appeal that the Board failed to apportion the burden of proof as required by the decision of this court in Behring International, Inc. v. NLRB, 675 F.2d 83 (3d Cir.1982), vacated, --- U.S. ----, 103 S.Ct. 3104, 77 L.Ed.2d 1359 (1983), on remand, 714 F.2d 291 (3d Cir.1983). The Supreme Court vacated Behring in light of its decision in Transportation Management, supra, after the parties argued the instant case