Edward PYGATT and Jennings
Love, Plaintiffs,

v.

PAINTERS' LOCAL NO. 277, INTERNA-
TIONAL BROTHERHOOD OF PAINT-
ERS & ALLIED TRADES and James T.
Brennan, as Business Manager and In-
dividually, Defendants.

Civ. No. 90–408 (SSB).

United States District Court,
D. New Jersey.

May 20, 1991.

Mark J. Blunda, Belford, N.J., for plaintiffs.

Theodore M. Lieverman, Tomar, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for defendants.

### OPINION

BROTMAN, District Judge:

This case involves a dispute between plaintiffs, members of Painters' Local No. 277 (herein "Union") in Atlantic City, and the Union over certain conduct of the Union in 1980 and 1981. Defendants have moved for dismissal of the complaint pursuant to Rule 12(b), Fed.R.Civ.Pro., or in the alternative, summary judgment pursuant to Rule 56, Fed.R.Civ.Pro., principally on grounds of collateral estoppel and mootness. For the following reasons, the motion will be granted in part and denied in part.

### FACTS AND PROCEDURE

Plaintiffs originally instituted suit in this court on March 2, 1981 alleging violations of the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA), §§ 101(a)(2), (a)(5) and 609, as amended, 29 U.S.C. §§ 411(a)(2), (a)(5) and 529. *Pygatt v. Painters' Local No. 277*, Civ.No. 81–641(SSB) (D.N.J.1981). Plaintiff Pygatt, a black man with 30 years experience as a paperhanger, became a member of the Union in July 1977. Plaintiff Love, a black man who was enrolled in the Union's apprenticeship program, became a member of the Union in February 1978.

Plaintiffs complained that the Union discriminated against them by failing to refer them out to employers seeking qualified paperhangers during the casino construction boom then underway in Atlantic City. Plaintiffs also alleged that they were penalized by the Union for speaking out against the Union's discriminatory practices by imposing fines on them, refusing to accept

payment of dues, failing to provide a full and fair hearing on charges against them and expelling them from the Union. Under the LMRDA, 29 U.S.C. § 529, it is unlawful for a labor organization or its officers to fine, suspend, expel, or otherwise discipline any of its members for exercising rights of free speech guaranteed by 29 U.S.C. § 411(a)(2) or without affording a full and fair hearing as required by 29 U.S.C. § 411(a)(5).

The facts leading up to these allegations involve a series of incidents in which plaintiffs Pygatt and Love voiced their complaint that defendants were discriminating against them on account of their race. In June 1980, plaintiff Love attempted to place a classified ad in *The Press,* a local newspaper of general circulation, alleging discrimination by the Union.[1] At a Union meeting on June 3, plaintiffs stood up and charged the Union with discriminatory referral practices. Later that month, *The Press* printed an article about a meeting of minority tradesman organized by plaintiffs and quoted Pygatt's criticism of the Union. The Union then filed charges against Pygatt for disloyalty, libel and other infractions of the Constitution of the Brotherhood. Love was charged with similar violations. On July 5, 1980, the Union's financial secretary, William L. Kinzer, charged Love with additional infractions, including libel for criticizing his maintenance of the Union's records.

On July 5, a Union trial was held on these charges, resulting in a $3,200 fine against Pygatt and a $3,650 fine against Love. The Union informed plaintiffs that they could not appeal these fines unless they paid 20% of the amount, which they did not do. On August 5, Love was fined an additional $1,200 for his criticism of the Union's financial secretary. On September 26, 1980, Pygatt was fined another $1,000 for picketing the Union headquarters. Since these were their second offenses, the Union told them that the entire $4,200 was to be paid in full before an appeal could be filed. Pygatt repeatedly attempted to pay his dues to the Union, but the Union refused to accept the dues until he paid the fines and expelled him. Subsequently, the Union expelled Love as well.

Rather than pursue their appeals within the Union, plaintiffs brought suit in this court alleging violations of LMRDA by the Union and state law tortious interference with employment rights by Business Manager James Brennan.[2] On plaintiffs' motion for a preliminary injunction, this court decided to stay any further proceedings and ordered the International to consider the matter on the merits within four months. *Pygatt v. Painters' Local No. 277, supra,* Order of April 27, 1981.

The International's General Executive Board considered plaintiffs' appeal and rendered a decision on November 5, 1981. It found that the underlying charges of the Local Union's trial board related to plaintiffs' false statements to *The Press,* libel and slander against the business manager and financial secretary, attempting to run a classified ad in *The Press* critical of the Union, abusive comments at membership meetings, "and the like." The International concluded that such actions fell within plaintiffs' free speech rights, which the courts have protected from union disciplinary action. The International reversed the decision of the trial board and rescinded all fines. It explicitly limited its decision "to the Trial Board actions described herein that are the subject of this appeal." Defendants' Exhibit 5 at 2.

Meanwhile, concurrent with their suit in this court, plaintiffs pursued charges before the National Labor Relations Board (NLRB). On December 22, 1980, plaintiffs filed an Unfair Practice Charge before the NLRB alleging that the Union refused to refer them for employment in violation of

---

1. Plaintiffs say *The Press* did not run the ad allegedly on grounds that the discrimination charge had to be filed with a government agency first. A *Press* employee showed the ad to the Union's leadership. Plaintiffs' 1981 Complaint at ¶ 8.

2. Plaintiff Love also alleged violation of the Union's fiduciary duty of fair representation. This charge has not been renewed in the present action and, therefore, is not relevant to this discussion.

sections 8(b)(2) and 8(b)(1)(A) of the National Labor Relations Act of 1947 (NLRA), as amended, 29 U.S.C. § 158. After two days of hearings, the Administrative Law Judge (ALJ) issued a decision on December 28, 1981, finding that the Union had refused to refer Pygatt out for jobs, in violation of sections 8(b)(2) and 8(b)(1)(A) of the NLRA, "because he engaged in conduct viewed by union officials as disloyal." *Polis Wallcovering Co.*, 262 NLRB 1336, 1343. The conduct referred to by the ALJ as "disloyal" was the same conduct underlying Pygatt's charges in his present complaint before this court, *i.e.*, expression of Pygatt's opinion on the Union's discriminatory referral practices.[3] The ALJ ordered that Pygatt "be made whole for any loss of earnings suffered as a result of the discrimination against him by payment of a sum equal to that which he normally would have earned as wages from the date of discrimination against him until such time as respondent Union properly refers him for employment, less net interim earnings during such period." *Id.* at 1344.

With respect to Love, the ALJ found no violation of the NLRA on account of testimony on behalf of the Union that its contract with the employers only authorized it to refer qualified apprentices. Love had been removed from the apprenticeship on the basis of his past poor employment record, a recent discharge for flagrant misconduct and his failure to meet the classroom attendance requirements, and no challenge to the legitimacy of the removal was made. *Id.* at 1340. Therefore, the ALJ concluded, "Local 277 would not have referred Love even if he had not engaged in conduct found offensive by union officials and which formed the predicate for internal union discipline." *Id.*

The ALJ's decision was affirmed by a panel of the NLRB on July 27, 1982, ruling on the exceptions filed by the Union and

Love.[4] 262 NLRB 1336. The Union and Love then filed a petition for review before the Third Circuit Court of Appeals, which affirmed the Board's decision on liability of the Union. The Third Circuit found that "there was substantial evidence to support the Board's finding that the Union's refusal to refer Pygatt for employment after June, 1980 was motivated by its hostility to Pygatt's criticism." *Local Union No. 277, International Brotherhood of Painters and Allied Trades v. NLRB*, 717 F.2d 805, 812 (3d Cir.1983). However, under the Supreme Court's ruling in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), the claimed unavailability of employers willing to hire Pygatt is an affirmative defense. Since the Board "did not determine whether the Union carried its burden of proving that there were no requests for paperhangers from employers who would accept Pygatt if he were referred," the Third Circuit remanded to the Board to consider that issue. *Local Union No. 277*, 717 F.2d at 813.

With respect to Love, the Third Circuit deferred to the Board's finding that the apprenticeship committee expelled Love for legitimate reasons and that this disqualified him from receiving job referrals. *Id.* at 811. The court also affirmed the Board's denial of Love's motion to reopen the record. *Id.* at n. 7.

On remand, the Board issued a supplemental decision and order on June 29, 1984, reaffirming its initial findings and ordering its same make-whole remedy. The Board concluded that the Union "presented no credible or probative evidence demonstrating that referring Pygatt would have been futile because no area contractors with jobs available would have hired him." *Painters Local 277 (Polis Wallcovering Co.)*, 271 NLRB 58, 59. This decision was enforced by the Third Circuit in a memorandum deci-

---

3. The ALJ found that "Brennan terminated, effectively, Pygatt's access to the hiring hall upon the same considerations which resulted in the imposition of union discipline, fines, and ultimate expulsion of Pygatt from union membership." *Polis Wallcovering Co.*, 262 NLRB at 1342.

4. The NLRB rejected Love's motion to reopen the record to present certain evidence pertaining to his employment record prior to Local 277's failure to refer him for employment. 262 NLRB 1336, n. 1.

sion on March 27, 1985, 760 F.2d 258 (3d Cir.1985).

While plaintiffs were pursuing their remedies before the International and the NLRB, this court retained jurisdiction over their LMRDA claims. Plaintiffs also had filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC), which on August 25 and 26, 1982 issued to each plaintiff a Notice of Right to Sue the Union for employment discrimination in violation of Title VII, § 704(a), 42 U.S.C.A. § 2000e–3(a).[5] Subsequently, on October 25, 1982, plaintiffs filed a motion for partial summary judgment, expedited hearing on damages and leave to file an amended complaint to assert a claim under Title VII. According to the docket sheet, the magistrate granted plaintiffs' motion to amend complaint on February 24, 1983.

On January 10, 1984, defendants filed a motion for summary judgment on multiple grounds of statute of limitations, preemption, mootness and estoppel. On February 16, 1984, prior to any ruling by this court, the parties entered in a stipulation of voluntary dismissal without prejudice on grounds "that a more orderly and economical resolution of the instant causes of action may be achieved by awaiting the final outcome of the NLRB proceedings before submitting the instant causes of action to civil trial." The stipulation, which was approved by the court, also stated that defendants' defenses and claims raised in its summary judgment motion "shall be preserved"; defendants also reserved the right to renew them upon reinstitution of plaintiffs' complaint.

After plaintiffs' suit in this court was voluntarily dismissed without prejudice and the NLRB had issued its supplemental order against the Union, Pygatt brought a second Unfair Practice Charge before the NLRB alleging that the Union had violated sections 8(b)(1)(A) and 8(b)(2) of the NLRA by causing the Claridge Hotel to discharge

him. On August 12, 1985, the ALJ issued an opinion, finding that the Union had committed the unfair labor practices and ordering that Pygatt be made whole. The Board affirmed the ALJ's decision on January 22, 1986. *Local Union No. 277, International Brotherhood of Painters (Del E. Webb)*, 278 NLRB 169.

Since the parties disagreed over the amounts the Union owed to Pygatt in both the *Polis Wallcovering* and *Del E. Webb* cases, the Regional Director ordered consolidation and a hearing. On June 27, 1986, the ALJ issued an order delineating the amounts to be paid to Pygatt for lost wages, replacement of medical health insurance, pension contributions and interest. 282 NLRB 405. The Union filed exceptions and a panel of the Board modified the formula used by the ALJ in determining the amounts owed. 282 NLRB 402 (1986).

Pursuant to the Board's determination, the Union paid the full amount ordered (over $43,000) in damages to and on behalf of Pygatt with the exception of $948.05, which the Union deducted as administrative dues. Again, the parties could not resolve the dispute over the correct amount, leading the Board to file an application for enforcement with the Third Circuit Court of Appeals on March 11, 1988. In an unpublished judgment order dated September 16, 1988, the Third Circuit granted the Board's petition and ordered the Union to remit the disputed $948.05. The Union has paid that amount, with interest.

Plaintiffs have now returned to this court and reactivated their 1981 suit by filing a new complaint almost identical to its second amended complaint in the 1981 action. *Pygatt v. Painters' Local No. 277*, Civ. No. 90–408(SSB). Defendants have moved to dismiss the complaint or grant judgment as a matter of law. They argue that 1) plaintiffs are collaterally estopped from relitigating their claims, 2) their claims concerning the Union's disciplinary

---

**5.** The provision states in pertinent part:
It shall be unlawful employment practice ... for a labor organization to discriminate against any member thereof ... because he has opposed any practice made an unlawful

employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

action are moot, 3) the Union did not violate the "full and fair hearing" protection of section 101(a)(5) of the LMRDA, 4) plaintiffs' state law claim is preempted by federal law, 5) plaintiffs' Title VII claims are time-barred and 6) part of plaintiffs' requested relief should be stricken.

DISCUSSION

### A. Standard on Motion to Dismiss

■ On a motion to dismiss, the court must take as true the well-pleaded allegations in the complaint. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Rogin v. Bensalem Township,* 616 F.2d 680, 685 (3rd Cir.1980), *cert. denied* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Motions to dismiss should be granted sparingly and only where the complaint discloses that plaintiff can not possibly prove a case entitling him or her to relief. *Sheppard v. American Dredging Co.,* 77 F.Supp. 73 (E.D.Pa.1948). "Reasonable factual inferences will be drawn to aid the pleader." *D.P. Enterprises, Inc. v. Bucks County Comm. College,* 725 F.2d 943, 944 (3rd Cir.1984).

### B. Collateral Estoppel

■ According to the general rule regarding collateral estoppel, or issue preclusion, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *National Labor Relations Board v. Yellow Freight Systems, Inc.,* 930 F.2d 316, 319 (3d Cir.1991), *quoting* Restatement (Second) of Judgments § 27 (1982). Administrative proceedings may have preclusive effect on subsequent litigation when the agency "is acting in a judicial capacity and resolves disputed is-sues of fact properly before it which the parties have had an adequate opportunity to litigate...." *United States v. Utah Construction Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

■ Federal courts have consistently held that NLRB unfair labor practice determinations can be binding as to fact and law under the doctrine of collateral estoppel in subsequent damage actions. *See, e.g., Wickham Contracting Co. v. Board of Educ.,* 715 F.2d 21, 26 (2d Cir.1983); *Glaziers & Glassworkers v. Custom Auto Glass Dist.,* 689 F.2d 1339, 1341 (9th Cir. 1982); *Consolidated Express v. New York Shipping Ass'n, Inc.,* 602 F.2d 494, 503–06 (3d Cir.1979), *vacated on other grounds,* 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980), *on remand,* 641 F.2d 90 (3d Cir.1981); *Jaden Electric v. Int'l Brotherhood of Electrical Workers,* 508 F.Supp. 983, 988 (D.N.J.1981). Absent demonstration of particularized unfairness, a party may not relitigate issues adjudicated by the NLRB to the extent that the issues are identical and their resolution was essential to the NLRB's decision. *Wickham,* 715 F.2d at 26–27.

■ As set forth above, the issues litigated in the NLRB proceedings concerned the Union's discriminatory referral practices against Pygatt and Love in retaliation for their "disloyalty," *i.e.,* their activities protesting the Union's refusal to refer them out to employers. The factual circumstances underlying plaintiffs' unfair practice charges are identical to those underlying their present allegations of violations of LMRDA. *Compare* 262 NLRB at 1340–42 *with* Plaintiffs' Complaint at ¶¶ 7–17. Furthermore, as the thorough opinion of the ALJ indicates, the determination of the Union's violation of sections 8(b)(1)(A) and 8(b)(2) necessarily involved resolution of the same factual issues present here. The ALJ determined that the Union refused to refer Pygatt to employers because of Pygatt's conduct in speaking out against the Union's discriminatory practices, picketing Union headquarters, organizing fellow minority workers and failing to pay the resulting fines. As to Love, the ALJ found

that the Union showed just cause in refusing to refer Love to employers on account of his dismissal from the apprenticeship program and his poor work record.

The lengthy and arduous proceedings before the NLRB demonstrate that the parties had a full and fair opportunity to litigate these issues in that forum. Furthermore, neither party alleges procedural unfairness and the court is unable to perceive any "procedural opportunities available to the [party] that were unavailable in the first action of a kind that might be likely to cause a different result." *Consolidated Express*, 602 F.2d at 504, *quoting Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 652 & n. 15, 58 L.Ed.2d 552 (1979).[6] Therefore, upon an appropriate motion for summary judgment, the court will apply the findings of fact made by the NLRB in deciding whether plaintiffs are entitled to judgment on their LMRDA, Title VII and state law claims.

Defendants would have the court go one step further and determine as a matter of law at this stage that plaintiffs are collaterally estopped from relitigating their claims in this suit because they "are identical to claims raised before the NLRB." Defendants' Brief at p.9. What defendants really seek is claim preclusion, not issue preclusion. The court, however, has before it *separate* and *independent* causes of action that concern identical facts previously litigated. Therefore, it cannot dismiss plaintiffs' claims as a matter of law on grounds that these particular claims have already been adjudicated.

### C. *Mootness*

#### 1. LMRDA Section 609:

■ The court must have before it a live case or controversy in order to assert Article III jurisdiction. *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964). "Federal courts

are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). A suit "must be a real and substantial controversy admitting of specific relief through a decree of conclusive character." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

■ The LMRDA § 609, 29 U.S.C.A. § 529, makes it unlawful for any labor organization or officer to fine, suspend, expel or otherwise discipline any of its members for exercising such protected rights as freedom of speech. In order for a plaintiff to bring suit under this section, he or she must be presently fined, suspended, expelled or otherwise disciplined by the union. Otherwise, a § 529 suit is moot. *See Stelling v. IBEW Local 1547*, 587 F.2d 1379, 1389–90 (9th Cir.1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979) (when disciplinary actions taken against two union members were dismissed, their § 529 claims were rendered moot); *Powers v. St. Louis Typographical Union*, 549 F.2d 60 (8th Cir.1977).

■ Here, plaintiffs admit in their complaint that in November 1981 the International dismissed the fines and readmitted them to the Union as new members. Competent evidence submitted by defendants supports this fact. Therefore, plaintiffs' cause of action under LMRDA § 609, 29 U.S.C.A. § 529, based on the Union's impermissible conduct against plaintiffs in exercising their free speech rights protected by LMRDA § 101(a)(2), 29 U.S.C.A. § 411(a)(2), must be dismissed as moot. Likewise, Count Two, which asserts a cause of action under LMRDA § 609, 29 U.S.C.A. § 529, based on the Union's disciplining plaintiffs without a full and fair hearing as guaranteed by LMRDA § 101(a)(5), 29 U.S.C.A. § 411(a)(5), must be dismissed as moot. The intraunion "trial"

---

**6.** Although Love sought to reopen the record before the Board to present evidence regarding his prior employment record, the Board rejected his request because he failed to allege extraordinary circumstances or any other matter satisfying the requirements to warrant reopening the record. 262 NLRB 1336, n. 1 (1982). This finding was explicitly affirmed by the Third Circuit Court of Appeals when it was raised by Love on appeal. *Local Union No. 277 v. NLRB*, 717 F.2d at 811, n. 7. This court is bound by their findings.

of which plaintiffs complain was the very proceeding that resulted in the imposition of charges and fines against plaintiffs and, as those fines no longer exist, the cause of action has evaporated.

## 2. LMRDA Section 102:

The LMRDA, however, does not limit an aggrieved union member's cause of action for infringement of the Act's codified "Bill of Rights" to § 529. Section 102 of LMRDA, 29 U.S.C.A. § 412, states that "[a]ny person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." Federal courts construing this provision of the LMRDA have ruled that plaintiffs may recover loss of wages, *Robins v. Schonfeld*, 326 F.Supp. 525 (D.C.N.Y.1971), mental suffering, emotional distress and loss of reputation, *Petramale v. Local No. 17 of Laborers' Int'l Union of North America*, 847 F.2d 1009 (2d Cir.1988), punitive damages, *Vanderventer v. Local Union No. 513 of Int'l Union of Operating Engineers, AFL–CIO*, 579 F.2d 1373 (8th Cir.1978), *cert. denied* 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 and attorney's fees, *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1972); *Brennan v. United Steelworkers of America*, 554 F.2d 586 (3d Cir.1977).

Although plaintiffs' complaint seeks compensatory, consequential, incidental and punitive damages, as well as attorney's fees, it fails specifically to plead a cause of action pursuant to § 412.[7] However, the court "may evaluate pleadings both in terms of their content at the time of their submission and as they might be amended at some later date." Wright, Miller & Kane § 2722, at 47. Given the liberality of granting leave to amend under Rule 15(a), Fed.R.Civ.Pro., and plaintiffs' demand for consequential and punitive damages in Counts One and Two, and in the interest of judicial economy, the court will consider the merits of defendants' motion in the face of a § 412 claim as well.

■ A plaintiff has a cause of action under § 412 if he can show the rights secured under 29 U.S.C.A. § 411 ("Bill of Rights") "have been infringed by *any* violation of this subchapter" (emphasis added). Therefore, in order to recover under § 412, Pygatt and Love must show a violation of Subchapter II, which covers the protection of freedom of speech and safeguards against improper disciplinary action.

■ Defendants contend that, as to both plaintiffs, this issue has already been litigated before the NLRB. With respect to Pygatt, the NLRB found that the Union fined and ultimately expelled Pygatt on account of his free speech activities and that this consideration motivated its refusal to refer Pygatt to employers. Essential to finding that the Union was motivated by improper considerations was the conclusion that the Union violated Pygatt's free speech rights by charging him with certain infractions, imposing fines and ultimately expelling him. Therefore, Pygatt has shown a viable cause of action under § 412. In addition, as to Pygatt's claim that the Union violated his right to a full and fair hearing, the NLRB did not consider that issue and the court does not have before it sufficient evidence to make a judgment as a matter of law. Therefore, defendants' motion for summary judgment on this point will be denied.

■ Defendants further argue that, since Pygatt has already received back pay and reinstatement to the Union, he is collaterally estopped from litigating any further damage issues. The court disagrees. Under case law interpretation of the relief available under § 412, Pygatt may be able to recover consequential and punitive damages as well as attorney's fees. Since discovery has not even begun on these damage issues, they must be preserved for a later stage of this litigation.

---

**7.** Plaintiffs explicitly frame their cause of action as one under § 412 for the first time in their opposition papers. Plaintiffs' Brief in Opposition to Motion to Dismiss at p. 12.

The court now turns to whether Love can show any violation of rights protected by § 411. Love was a cohort of Pygatt's who joined him in criticizing the Union for its racially discriminatory practices. Love's activities also led to charges for certain infractions, imposition of fines and ultimately expulsion from membership. However, at the time, Love was only an apprentice and the Union was obligated to refer only "qualified" apprentices. In finding no violation of sections 8(b)(1)(A) and (2) of the NLRA, the ALJ credited the Union's affirmative defense that it "would not have referred Love even if he had not engaged in conduct found offensive by union officials and which formed the predicate for internal union discipline." 262 NLRB at 1340. Therefore, Love is collaterally estopped from relitigating whether the Union was improperly motivated when it refused to refer him to employers.

However, the NLRB did *not* make a ruling on whether the Union violated Love's rights under § 411, a finding clearly not essential to its ruling. Rather, it gave weight to the evidence that Love was not a qualified apprentice. Since the NLRB did not specifically rule on whether the Union violated Love's rights under § 411 by imposing certain fines and expelling him, Love is not collaterally estopped from raising that issue in this court. The same is true of Love's claim that the Union violated his right to a full and fair hearing.

Pending plaintiffs' amending their complaint to assert a cause of action pursuant to LMRDA § 102, 29 U.S.C.A. § 412, plaintiffs have preserved their LMRDA cause of action. They will be granted leave to amend their complaint within thirty days.

### D. *Title VII Claim*

Count IV of plaintiffs' amended complaint alleges that the Union retaliated against plaintiffs' opposition to what they believed were unlawful employment practices in violation of section 704(a) of Title VII, 42 U.S.C.A. § 2000e–3(a).[8] In a letter dated June 4, 1982, the Equal Employment Opportunity Commission (EEOC) issued a determination finding reasonable cause to believe that the fines and failure to refer plaintiffs' for employment constituted unlawful retaliation in violation of § 704(a). After defendants refused to participate in EEOC-sponsored conciliation, EEOC issued a Notice of Right to Sue to each plaintiff on August 25 and 26, 1982. On October 12, 1982, plaintiffs filed a notice of motion for leave to amend their complaint to add the § 704(a) allegation, returnable on November 19, 1982. The docket reveals that the motion was granted on February 24, 1983.

Defendants raise two points in support of their motion to dismiss plaintiffs' Title VII claim. First, defendants argue that plaintiffs' Title VII claim was not timely filed in that their motion to amend the complaint was not granted until after the ninety day filing deadline noticed in the August right to sue letters. Although the argument may have some technical appeal, its practical application would work a real injustice to parties who already have a complaint filed in district court and then timely file a motion to amend to add a Title VII claim pursuant to an EEOC right to sue letter. It also puts an undue burden on an already overworked judicial system to consider and determine a motion to amend within ninety days of a notice of right to sue, regardless of when in that ninety-day period the motion to amend was filed. As the court found in *Pollard v. City of Hartford*, 539 F.Supp. 1156, 1161 (D.Conn.1982), the plaintiffs have taken all the steps they could within the ninety-day period. The liberal interpretation accorded Federal Rule of Civil Procedure 15(a) for granting leave to amend and the broad remedial purposes of Title VII provide yet additional support to conclude that filing a

---

**8.** The provision states:

It shall be an unlawful employment practice ... for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment prac-

tice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C.A. § 2000e–3(a).

motion for leave to amend a complaint constitutes the bringing of a Title VII claim within the statutory ninety-day period.

Defendants' second argument is more compelling. They argue that the Title VII claim does not afford any additional relief than plaintiffs have already obtained from the International and the NLRB. As defendants correctly point out, monetary damages are not available under Title VII, which allows only equitable relief in the form of restitution and injunctions; neither compensatory nor punitive damages are recoverable. *See, e.g., Richerson v. Jones,* 551 F.2d 918, 926–28 (3d Cir.1977); *Boddy v. Dean,* 821 F.2d 346, 352 (6th Cir.1987). Since plaintiff Pygatt has already received backpay and a cease and desist order against the Union for the same charges alleged in his Title VII claim, and concedes that he is not entitled to a double recovery, his Title VII claim must be dismissed.

On the other hand, the court is not convinced on the evidence before it that plaintiff Love must lose his Title VII claim. Although the International rescinded the fines imposed on Love and reinstated him to membership, he has not received backpay or a cease and desist order from the NLRB because the NLRB found that the Union was allowed to expel him for legitimate reasons and such disqualified him from receiving job referrals. However, it is not apparent to the court whether Love is collaterally estopped from pursuing his Title VII claim in that the Union's affirmative defense to the NLRA charge may not be valid in the Title VII context. The parties have not briefed this issue and, therefore, the court will reserve decision on it pending further motion practice. For now, the court will grant defendants' request that plaintiffs' demand for consequential, incidental and punitive damages be stricken from their Title VII count.

E. *Malicious Interference with Employment Rights*

Count III of plaintiffs' complaint charges Business Agent Brennan with intentionally and maliciously interfering with plaintiffs' employment rights by "[e]ncour-

aging the Union members to harass, ridicule and threaten Plaintiff Love on the job site in an effort to get him branded a 'poor worker'; [s]oliciting letters from contractors ... in order to mark Plaintiffs as poor workers; [and] [o]ther malicious and intentional acts" as described elsewhere in the complaint. Plaintiffs' Amended Complaint at ¶ 27.

Defendants argue that plaintiffs' state law claim must be dismissed because it is preempted by the National Labor Relations Act and within the exclusive and primary jurisdiction of the NLRB. The Supreme Court has on several occasions set out the court's task in determining whether preemption applies.

"First, we determine whether the conduct that the State seeks to regulate or to make the basis of liability is actually or arguably protected or prohibited by the NLRA.... if the conduct at issue is arguably prohibited or protected otherwise applicable state law and procedures are ordinarily preempted. When, however, the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility ... we refuse to invalidate state regulation or sanction of the conduct." *Operating Engineers v. Jones,* 460 U.S. 669, 676 [103 S.Ct. 1453, 1458–59, 75 L.Ed.2d 368] (1982), *citing, San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245 [79 S.Ct. 773, 779, 3 L.Ed.2d 775] (1959); *Farmer v. Carpenters,* 430 U.S. 290, 296 [97 S.Ct. 1056, 1061, 51 L.Ed.2d 338] (1977).

Conduct the Supreme Court has found not preempted by the NLRA includes violence, *United Automobile Workers v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958), libel, *Linn v. Plant Guard Workers, Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), intentional infliction of emotional distress, *Farmer, supra,* and trespass, *Sears, Roebuck & Co. v. San Diego District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978).

There is no doubt in the court's mind that part of plaintiffs' claim of malicious inter-

ference with employment rights is preempted by the NLRA. Plaintiffs' complaint that Brennan solicited letters from contractors in order to mark plaintiffs as poor workers charges conduct that is arguably prohibited by sections 7 and 8 of the NLRA, 29 U.S.C.A. §§ 157 and 158 ("[i]t shall be an unfair labor practice for a labor organization or its agents to cause or attempt to cause an employer to discriminate against an employee. . . ."). Indeed, those very charges were brought before and considered by the NLRB in its initial ruling on plaintiffs' case. 262 NLRB at 1342. Likewise, plaintiffs' claim of "other malicious and intentional acts" described elsewhere in the complaint involve conduct that arguably is prohibited by the NLRA. Therefore, to the extent plaintiffs' allegation of malicious interference is based on Brennan's conduct in soliciting unfavorable letters from employers, it is covered by the NLRA, and, therefore, preempted. *See Iron Workers Local 207 v. Perko,* 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963); *Jones, supra.*

■ The court is more circumspect, however, as to whether the NLRA preempts Love's claim that Brennan encouraged other Union members to harass, ridicule and threaten him on the job site in order to get him branded as a poor worker. The complaint alleges that "[i]n or about August, 1980, Plaintiff Jennings Love was finally referred by the Union to a job. Love was suffering from physical illness due to severe insomnia which was caused by the intimidation and threatening atmosphere he was forced to endure from the [Union] and its members." As evidenced by the record before the NLRB, Love's claimed "insomnia" led to an incident in which on August 15, 1980 he was discovered asleep on the floor in his work area by the general contractor's superintendent. The matter was reported to the subcontractor and Love was discharged immediately. This incident proved to be Love's undoing, as he was subsequently removed from the apprenticeship program in part due to his unsatisfactory performance on past jobs. 262 NLRB at 1340. Love alleges that he suffered severe emotional and physical distress as a result of Brennan's activities.

Essentially, Love charges Brennan with orchestrating a campaign among the Union members to harass and intimidate him to such an extent that he lost sleep and was unable to perform properly on the job. The court's review of sections 7 and 8 of the NLRA reveals no provision that would arguably prohibit or protect this type of conduct. For example, 29 U.S.C.A. § 158(b), which applies to conduct of a labor organization and its agents, refers only to action by a union against employees that restrains or coerces them in the exercise of their rights under § 157. Section 157 says employees shall have the right to refrain from activities of self-organization, collective bargaining and similar activities. Here, Love alleges that Brennan took action to maliciously interfere with his ability to perform the job he was hired to do, as opposed to interfering with Love's collective bargaining activities. Likewise, Love alleges something different than hiring hall discrimination or breach of duty of fair representation, which would be preempted by the NLRA.

Furthermore, New Jersey law imposes liability on "one who unjustifiably interferes with the contract of another," or meddles into the affairs of another, for which punitive damages are recoverable. *Cappiello v. Ragen Precision Indus., Inc.,* 192 N.J.Super. 523, 529, 471 A.2d 432 (App. Div.1984). In the criminal case of *Harris v. Perl,* 41 N.J. 455, 197 A.2d 359 (1964), the New Jersey Supreme Court stated:

> The law protects a man in the pursuit of his livelihood. True, he cannot complain of every disappointment . . . But if the act complained of does not rest upon some legitimate interest or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed.

41 N.J. at 461, 197 A.2d 359. Furthermore, protection extends to an individual's interest in reasonable expectations of economic advantage. *Id.* at 462, 197 A.2d 359. In light of the state's interest in prohibiting

conduct that is inherently and "deeply rooted in local feeling" about what fair people do to one another in pursuit of their livelihoods, the court finds that Brennan's conduct of encouraging Union members to harass Love is peripheral to the NLRA and, therefore, not preempted.[9]

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss will be granted in part and denied in part. An appropriate order will be entered.

---

**9.** This conclusion does not require the court to rule at this time on whether Brennan may be individually liable for interfering with Love's employment rights by encouraging other Union members to harass him. The determination of this issue must await further discovery of Brennan's purported conduct and whether he was acting as an authorized agent of the Union at the time, an issue not determined by the NLRB. If indeed Brennan was acting as an agent of the Union, he can not be held individually liable under federal or state law for his acts. *See* 29 U.S.C. § 185(b); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Vaca v. Sipes,* 386 U.S. 171, 179, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967). Since plaintiffs did not name the Union in Count III, it would be dismissed.