Gary CLARK, Larry Dyer, Gerald Gallagher, Robert Naslanic, Dwight Walker and Mary Knox, Plaintiffs,

v.

James F. ESSER, Jim Cianciolo, Betty Cardinal, Leon Cooper, Greg Lowran, Rick Oliver, David Witulski, Bill Duttman and Teamsters Local 243, Defendants.

No. 92–CV–72341–DT.

United States District Court, E.D. Michigan, S.D.

May 27, 1993.

Ellis Boal, Detroit, MI, for plaintiffs.

Curtis G. Rundell, II, Troy, MI, for defendants.

*OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, IN PART*

ROSEN, District Judge.

## I. INTRODUCTION

Plaintiffs, members of a political caucus known as "rank and file teamsters" or "RAFT" in Teamsters Local 243, instituted this action against Defendants, members of a political caucus in Teamsters Local 243 known as "Esser–Cinci" and Defendant Local 243, claiming that Defendants deprived Plaintiffs of their right to free expression when the Individual Defendants filed a defamation, libel, and slander action against Plaintiffs.

## II. PROCEDURAL HISTORY

Plaintiffs filed a complaint in this Court on April 27, 1992, alleging that Defendants violated: (1) Plaintiffs' rights to exercise free speech, pursuant to the Labor–Management Reporting and Disclosure Act, 29 U.S.C. 411(a)(2); (2) Plaintiffs' rights to be free from malicious prosecution, pursuant to Michigan law; and (3) Michigan Court Rule 2.114, which prohibits the filing of frivolous suits.

Defendant Local 243 filed an answer and counter-claim on May 27, 1992, insisting that it was never a party to the state court action and thus is not responsible for the alleged impropriety in bringing the state suit. Defendant Local 243 also seeks attorneys' fees.

The Individual Defendants filed an answer and counter-claim on September 22, 1992, maintaining that Plaintiffs' action is barred by the statute of limitations, exclusive jurisdiction rests with Judge Olzark in the Wayne County Circuit Court, and the state court's rulings collaterally estop this lawsuit. In addition, the Individual Defendants filed a counterclaim for defamation, libel, and slander as set forth in their dismissed state action complaint, and attorneys' fees.

On February 24, 1993, Plaintiffs moved for summary judgment on the Individual Defendants' counter-claim 2(a), which alleged defamation, libel, and slander, and on March 2, 1993, the Individual Defendants and Teamsters Local 243 filed motions for summary judgment on all of Plaintiffs' claims.

Having reviewed the parties' respective briefs and the exhibits attached thereto, and having heard the oral arguments of counsel on May 19, 1993, the Court is now prepared to rule on the pending motions, and this Opinion and Order sets forth that ruling.[1]

## III. FACTUAL BACKGROUND

On November 16, 1990, James F. Esser, Jim Cianciolo, Betty Cardinal, Leon Cooper, Greg Lowran, Rick Oliver, David Witulski, and Bill Duttman ("Individual Defendants"), together forming a political caucus known as Esser–Cinci, filed suit against Plaintiffs in Wayne County Circuit Court alleging defamation, libel and slander for information that Plaintiffs published in their September, 1990 political newsletter, *Right Idea*. In that publication, Plaintiffs urged fellow union members not to vote for Esser–Cinci members at an upcoming officer election, but to vote for RAFT members instead. In the publication, Plaintiffs alleged that Esser–Cinci was going to "steal" votes, that they engaged in "election fraud", and that they were involved in embezzlement.

In the state court action, RAFT moved for summary judgment, arguing that Esser–Cinci had not met its burden of showing that the newsletter was not speech protected by the Labor–Management Reporting and Disclosure Act, 29 U.S.C. 401 *et seq.* Although Judge Olzark apparently did not consider the briefs regarding that motion, he heard oral argument and denied RAFT's motion for summary judgment. However, Judge Olzark subsequently dismissed the case on December 20, 1991 when most of the Individual Defendants failed to appear, and individuals Esser and Cianciolo refused to be deposed

and announced that they would abandon the case.

Plaintiffs, who were the defendants in the dismissed state court action, bring this suit against Defendants claiming that Defendants violated Plaintiffs' rights when Individual Defendants filed their state court action.

## IV. ANALYSIS

### A. THE STANDARDS GOVERNING CONSIDERATION OF A MOTION FOR SUMMARY JUDGMENT.

Summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court decisions—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[2] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

After reviewing the above trilogy, the Sixth Circuit established a series of princi-

---

**1.** Although Plaintiffs' motion was not addressed at the hearing, pursuant to Local Rule 7.1(e)(2), the Court will decide the matter without a hearing. In addition, the Court notes that since Defendants failed to argue for summary judgment with respect to Plaintiffs' state law claims, those claims survive summary disposition.

**2.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure*, § 2727, at 29 (1991 Supp.).

ples to be applied to motions for summary judgment. They are summarized as follows:

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

See *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). The Court will apply the above principles in deciding the Defendants' motion for summary judgment in this case.

## B. LABOR–MANAGEMENT REPORTING AND DISCLOSURE ACT.

Title I of the Labor–Management Reporting and Disclosure Act ("Landrum–Griffin Act"), 29 U.S.C. §§ 411–415, provides a number of protections to union members, including the right to free speech and assembly, the right to sue, and the right not to be improperly disciplined. Section 411 provides in part:

**§ 411. Bill of rights; constitution and bylaws of labor organizations**

(a)(1) Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

\*　　\*　　\*　　\*　　\*　　\*

(4) Protection of the right to sue. No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further*,

That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

(5) Safeguards against improper disciplinary action. No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a) (1985) (emphasis in original).

Section 412 provides that any persons whose § 411 rights have been infringed may bring a civil action in a federal district court. *See* 29 U.S.C. § 412; *Murphy v. International Union of Operating Engineers Local 18,* 774 F.2d 114, 121 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986). That section states:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

29 U.S.C. § 412.

Thus, the instant inquiry can be neatly focused: Whether, as a matter of law, Plaintiffs have failed to demonstrate that Defendants infringed Plaintiffs' free speech rights when the Individual Defendants filed the state court slander action.

**1. Defendants' Arguments in Support of Summary Judgment and Plaintiff's Counter-Arguments.**

The Individual Defendants argue that union officers acting in their individual capacities have the right to pursue a defamation, libel, and slander action for statements made in the context of a union election. Thus, the Individual Defendants maintain that although 29 U.S.C. § 411(a)(2) may protect an individual candidate from an action for libel or slander instituted by the union, said section does not protect a candidate from an action by a union officer in his or her individual capacity, because § 411(a)(2) does not strip individuals of their constitutional and common law right to institute a lawsuit. Finally, the Individual Defendants note that Defendant Local 243 was not a party to the state court complaint and had no involvement with the individuals' decision to institute the lawsuit.

Defendant Local 243 argues that the United States Department of Labor, at the request of Plaintiffs, already investigated Local 243's conduct and absolved Local 243 of any wrongdoing during the 1990 election.

Plaintiffs admit that no liability attaches under § 411(a)(2) if the Individual Defendants acted solely as individuals but argues that liability attaches in the instant case because there is a connection between the individuals' acts and their positions in the union.

Plaintiff alleges that the following facts demonstrate union involvement in the state court lawsuit: (1) Thomas Ziembovic, the union organizer, effected service of process upon the RAFT members; (2) the Detroit Free Press reported that a "teamsters spokesman" told them that the purpose of the suit was to discourage RAFT members from making false accusations; (3) Esser-Cinci members were at the local union hall when they drafted and sent a letter firing their attorney in the state court action; (4) after Esser-Cinci fired their lawyer, the lawyer returned the case files to them at the Local 243 office; (5) Defendants Esser and Cianciolo answered interrogatories in the state court action and had them notarized by a notary at the union hall; (6) the union is paying for the defense of the individual Defendants in the instant suit; and (7) Esser-Cinci constituted the entire local Teamsters executive board.

## 2. There Are Material Issues Of Fact Precluding Summary Disposition Of Whether Defendants Violated Plaintiffs' § 411 Rights When Members Of The Esser–Cinci Caucus Filed A State Law Defamation, Libel, And Slander Action.

■ Section 412 of the Landrum–Griffin Act provides that "any person" whose rights secured by that subchapter have been "infringed by any violation of this subchapter" may bring a civil action. Apparently, a plaintiff may bring such an action against *any* defendant, since § 412 does not limit its applicability to suits against unions. In fact, that the second sentence of § 412 is qualified by the language "any such action against a labor union ..." suggests that the statute also intended to permit actions against non-labor union defendants. *See Morrissey v. National Maritime Union*, 544 F.2d 19, 24 (2d Cir.1976) (recognizing that suits may be brought against individual defendants, "at least if it is shown that they were acting under color of union authority").[3]

■ Thus, the instant question is whether the Individual Defendants (1) acted under color of union authority and (2) impermissibly infringed Plaintiffs' rights "to express any views, arguments, or opinions" when Individual Defendants filed their state court defamation action against Plaintiffs.

### a. Union complicity.

In the instant case, Plaintiffs have demonstrated that a factual dispute exists regarding union complicity in the state court action.

In *Pygatt v. Painters' Local No. 277 International Brotherhood of Painters & Allied Trades*, 763 F.Supp. 1301 (D.N.J.1991), the court recognized the viability of a Landrum–Griffin action when a union attempted to inhibit a members' free speech rights by filing a lawsuit. In that case, the union filed charges against a member for disloyalty, libel and other infractions when the member at-

tended a meeting and charged the union with discriminatory referral practices, and a newspaper later published the member's criticisms. A union trial resulted in a verdict against the member, and the member brought suit alleging violations of the Landrum–Griffin Act. In *Pygatt*, the district court found that the plaintiff had pleaded a cognizable claim under § 412, because the union charged him with libel and related violations in order to infringe on the member's free speech rights. *Id.* at 1309.

In the instant case, Defendant Local 243 was not a party to the state court action. However, merely because the union's name did not appear in the case caption, does not mean that the union did not actively support the suit. Had the union, itself, filed the defamation action against RAFT members, such a suit would have raised suspicion that the union filed it in order to inhibit Plaintiffs' expression. In other words, as *Pygatt* and other cases implicitly recognize, a union suit of this nature against union members, raises an inference of ulterior motives. *See, e.g., Rosario v. Amalgamated Ladies Garment Cutters' Union, Local 10, etc.*, 605 F.2d 1228, 1246 (2d Cir.1979) ("Although union action is a prerequisite to any liability under § 102 [29 U.S.C. § 412], since the purpose of the Act is to regulate the relationship between a labor organization and its members, a union official who aids [sic] abets, instigates, or directs a wrongful use of union power to deprive a member of his rights under § 101 [29 U.S.C. § 411] may be held liable under § 102 ..."), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). Thus, the issue is whether Defendant Local 243, regardless of its absence from the caption of the state court complaint, aided, abetted or otherwise supported Esser–Cinci's state court action.

In the instant case, Plaintiffs have established a sufficient nexus between Defendant Local 243 and the state court action to raise a factual dispute as to whether the union sponsored the state court suit.[4] In particu-

---

3. Apparently, this is the only theory of liability upon which Plaintiffs rely. Whereas Plaintiffs fail to put forth any evidence regarding improper intentions on the part of Individual Defendants,

Plaintiffs note numerous instances of union complicity with the state court action.

4. The Sixth Circuit has set forth the standards for union liability:

lar, the Court notes that the following four pieces of evidence preclude summary judgment: (1) the article in the Detroit Free Press; (2) the entire executive board of the Local 243 were the individuals who filed the state court suit; (3) paragraph fourteen of Defendant Local 243's answer to the complaint; and (4) much of the work on the state case was performed at the union office.

A November 22, 1990 article in The Detroit Free Press, reported that the "[l]eaders of Teamsters Local 243 in Detroit launched a pre-emptive strike against their dissident challengers Wednesday in the form of a libel suit in Wayne County Circuit Court." Most important for the instant inquiry, the article went on to state: "*A Teamster spokesman said the lawsuit is designed* in part to 'temper them from making false accusations against the officers' in upcoming union election."

That article raises the inference that the union was involved in bringing the state court suit. First, that "a Teamster spokesman" commented on the suit demonstrates an inference of union interest in the suit. More importantly, that the spokesman commented on the "design" of the suit, suggests that the union helped create it.

Second, the Court cannot help but notice that the entire executive board of Local 243 brought the state court action. Although Individual Defendants claim that the entire board brought the suit, because they were each, independently, defamed, taking this fact in a light most favorable to the non-moving party, the Court finds that it raises an inference of union involvement in the suit.

Third, the Court notes that in Defendant Local 243's answer to the complaint, it admitted that the Individual Defendants conducted the suit on union time. Although at the hearing, Defendants' counsel insisted the suit was not conducted at union time, the answer raises an inference of union involvement that

Unions, like corporations or other artificial entities, can act only through their agents. Under general principles of agency, a union can be liable if its officers and agents actively participate in unlawful conduct ...

the fact-finder will have decide whether to believe.

Finally, much of the work on the state case was performed at the union office. Although Individual Defendants insist that the work was not performed on "union time," that explanation does nothing to rebut the inference that union resources were expended on the suit. Therefore, material facts exist as to whether Defendant Local 243 supported Individual Defendants' filing of the state court suit.

**b. Whether the state court action was filed to infringe impermissibly on Plaintiffs' free speech rights.**

The Sixth Circuit has held that unconventional methods of infringing free speech rights are still actionable. *See Shimman v. Frank,* 625 F.2d 80, 90 (6th Cir.1980); *see also Murphy v. International Union of Operating Engineers Local 18,* 774 F.2d 114, 122 (6th Cir.1985) (economic discrimination by the union is actionable if it infringes § 411 rights), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986). In *Shimman,* a dissident union member filed an action against individual union members, the local union, and the international union when two individual members attacked the plaintiff at a union meeting. The plaintiff alleged that the attack violated his rights under § 101 of the Landrum–Griffin Act, codified at 29 U.S.C. § 411. *Shimman,* 625 F.2d at 90. The Sixth Circuit upheld the district court's finding of liability against the individual defendants and the local union, but reversed its finding of liability with respect to the international union. *Id.* at 103–104.

Although the *Shimman* court recognized that most individuals bring suits for the infringement of their § 411 rights when they are improperly disciplined, it explained that an attack on a union member can amount to a violation:

> We do not doubt that a deliberate attack on a union member can amount to a viola-

The rule of law remains, however, that a union 'may only be held responsible for the authorized or ratified actions of its officers and agents.'
*Shimman v. Frank,* 625 F.2d 80, 94–95 (6th Cir. 1980) (citations omitted).

tion of § 101. In fact, there are few more direct ways of chilling the exercise of a union member's Landrum–Griffin Act rights than by beating him up. The real issue here is whether the record supports the district court's determination that the beating was deliberately administered in order to teach the dissidents a lesson. An isolated fight between two union members has nothing to do with the Landrum–Griffin Act. A beating designed to punish dissidents violates the Act.

*Id.* at 90–91.

In the instant action, therefore, the question is whether Plaintiffs have submitted sufficient evidence to demonstrate that Individual Defendants filed their state court defamation action in order to chill Plaintiff's free speech rights in the context of the then upcoming union election, rather than to protect their personal reputations from being disparaged.[5]

Plaintiffs have offered sufficient evidence of impermissible intent to withstand a summary finding. First, as described above, there is the November 22, 1990 article in The Detroit Free Press. By reporting that "[a] Teamster spokesman said the lawsuit is designed in part to 'temper them from making false accusations against the officers' in upcoming union election," the article expressly notes that "a Teamster spokesman" attributed a potentially impermissible purpose to the state court action. In other words, that the purpose of the state court action was to "temper [Plaintiffs] from making false accu-

sations against the officers" in the then upcoming election, sufficiently infers that Individual Defendants filed the suit impermissibly to infringe on Plaintiffs' Landrum–Griffin rights.

In addition, the Court notes that Individual Defendants' decision to dismiss their suit after the union election but before vindication of their right to collect damages to remedy their allegedly defamed reputations, raises the material factual question of whether Individual Defendants filed the suit merely to deprive Plaintiffs of their Landrum–Griffin rights during an election.[6]

### C.  COUNTERCLAIM 2(A)—DEFAMATION, SLANDER, AND LIBEL.

██  Plaintiffs move for summary judgment on Individual Defendants' counterclaim 2(a), which sets forth the claims that they had asserted in their state court lawsuit. Plaintiffs allege that the counterclaim is barred by the applicable statute of limitations.

Michigan law requires that slander and libel claims be filed within one year of the date of publication. M.C.L.A. § 600.5805(7). In the instant case, the one year is tolled between the times of service of the state suit and the dismissal of the state suit. M.C.L.A. § 600.5856(1).

The defamation claim accrued on the dates of publication of the September, 1990 *Right Idea.* Plaintiffs have submitted an uncontested affidavit that states that the latest

---

5. At the hearing, even Plaintiffs' counsel conceded that the Landrum–Griffin Act does not eviscerate a union employee's right to seek redress for common law torts. Indeed, one court has thoroughly explored the legislative history of § 411 and concluded that *"[s]ection 101(a)(2)* [codified at 29 U.S.C. § 411(a)(2) ] *does not deprive an aggrieved union officer of his common law actions for libel or slander." See Stark v. Twin City Carpenters Dist. Council,* 219 F.Supp. 528 (D.Minn.1963) (emphasis added). This Court agrees with counsel and the Minnesota court's statement, since there is nothing in the text or legislative history of §§ 411 or 412 to suggest that because a union member has a right to free speech, another union member loses his right to protect his reputation.

The Court notes that this analysis accords with common sense. If two competing union officers had a contract for goods and the seller of the

goods disparaged the buyer's integrity in the context of a union election and then shipped the buyer non-conforming goods—surely, § 411 would not prohibit the buyer from filing a breach of contract action against the seller. Thus, even though the seller could claim that the goods are conforming and the buyer merely filed suit to discourage the seller from exercising his right to comment on the buyer's integrity, the buyer would still have the right to bring his contract action.

6. The Court notes that it could find no authority, nor did Defendant Local 243 offer any, to support Defendant Local 243's argument that it is entitled to summary judgment because the United States Department of Labor has absolved the union of any wrongdoing during the 1990 election.

# 1238

date on which the publication was distributed was September 10, 1990 and, therefore, the defamation claim accrued on that date.

Esser–Cinci individuals filed their state claims on November 16, 1990, and according to Plaintiffs' uncontested affidavit, service was effected on different RAFT members between November 20, 1990 and April 10, 1991. As Plaintiffs did in their motion, the Court will assume facts most favorable to Defendants and assume that all Plaintiffs were served on November 20, 1990. Therefore, seventy-one days passed between the claim accrual (September 10, 1990) and the service of the state suit (November 20, 1990).

The state court judge dismissed Betty Cardinal, Leon Cooper, Greg Lowran, Rick Oliver, David Witulski, and Bill Duttman's suit on October 25, 1991—333 days before they filed the instant counterclaim. Combined with the seventy-one days from the accrual to service, those Individual Defendants filed their claim after 404 days, well beyond the one-year limit and, therefore, the Court dismisses those Individual Defendants' counterclaim 2(a).

The state court did not formally dismiss James F. Esser, and Jim Cianciolo's suit until December 20, 1991—278 days before they filed the instant counterclaim. Combined with the seventy-one days from the accrual to service, Individual Defendants Esser and Cianciolo filed their claim after only 349 days, within the one-year limit and, therefore, the Court denies Plaintiffs' motion to dismiss those Individual Defendants' counterclaim 2(a).

## V. *CONCLUSION*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DE-CREED that Defendants' motion for summary judgment be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion for summary judgment on Defendants' counterclaim 2(a) be, and hereby is, GRANTED, in part. Accordingly,

IT IS FURTHER ORDERED that only Individual Defendants' Betty Cardinal, Leon Cooper, Greg Lowran, Rick Oliver, David

Witulski, and Bill Duttman's counterclaim 2(a) be DISMISSED.